IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| GORDON SELLNER, | CV 20-00038-H-BMM-JTJ |
| Plaintiff, | |
| vs. | ORDER AND FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE |
| ANNETTE CARTER, RENEE BAUER, KRISTINA LUCERO, DARREL BELL, BRAD NEWMAN, COLLEEN AMBROSE, ROBERT LISHMAN, and LORRAINE SCHNEIDER | |
| Defendants. | |

Plaintiff Gordon Sellner has filed a Motion to Proceed in Forma Pauperis (Doc. 1) and a proposed Complaint seeking injunctive relief against members of the Montana Board of Pardons and Parole (BOPP) and legal counsel for the Montana Department of Corrections regarding the procedures used in his parole hearing.  The Court will grant the motion to proceed in forma pauperis but recommends that this matter be dismissed for failure to state a federal claim.

## I.  MOTION TO PROCEED IN FORMA PAUPERIS

Pursuant to 28 U.S.C. § 1915(b)(1), Mr. Sellner must pay the statutory filing fee of $350.00.  28 U.S.C. § 1915(b)(1).  The Court will allow Mr. Sellner to proceed with his case and pay in monthly installments.  Mr. Sellner submitted an account statement showing average monthly deposits of $346.04 for the six-month

period of October 19, 2019 through April 20, 2020.  Therefore, an initial partial filing fee of $69.21 will be assessed by this Order.  28 U.S.C. § 1915(b)(1)(B) (allowing an assessment in the amount of 20% of the prisoner's average monthly deposits).  A separate order will direct the agency having custody of Mr. Sellner to collect the initial partial filing fee from Mr. Sellner's account and forward it to the Clerk of Court.

Thereafter, Mr. Sellner must make monthly payments of 20% of the preceding month's income credited to his prison trust account.  The percentage is set by Congress and cannot be altered.  28 U.S.C. § 1915(b)(2).  A separate order will direct the agency having custody of Mr. Sellner to forward payments from his account to the Clerk of Court each time the account balance exceeds $10.00, until the filing fee is paid in full.  28 U.S.C. § 1915(b)(2).

## II.  STATEMENT OF THE CASE

### A.  Factual Allegations

Mr. Sellner alleges that on August 21, 2019, Parole Board Members Newman, Lucero, and Bauer held a hearing and denied his parole application.  The written statement of reasons stated:  "parole at this time would diminish severity of offense . . .".  He alleges this parole determination was held in his absence.[1]

---

[1] According to the Board of Pardons and Parole's Final Board Dispositions for August 2019, Mr. Sellner's August 2019 hearing was an annual review and not an appearance.  https://bopp.mt.gov/dispositions/final_board_dispositions_fy2012

On August 25, 2019, Mr. Sellner wrote the Board to ask if they had considered his support letters. Board Member Newman responded on September 4, 2019 stating that the Board did consider the letters but any "positive considerations" were outweighed by his "long-standing anti-government belief . . ." Mr. Sellner concedes that this is a statutory factor the Board can consider but contends it was not documented in the written case disposition pursuant to Parole Board Rule § 20.25.501(1)(3)(4) ARM. Mr. Sellner contends that without his presence at the parole application hearing, Mr. Newman could not know how Mr. Sellner felt about the government and its authority. He asserts that by holding the parole hearing without him, Defendants violated his due process right to notice and his ability to verify or refute this reason for denial.

On September 1, 209, Mr. Sellner wrote the Board requesting to view his Parole Guideline Score used to score his August, 2019 parole application. He claims that pursuant to state statute he is entitled to view any documents used or maintained by the Board that do not have a privacy or security designation. On September 5, 2019, Carter responded that the Board had been using the Guideline Scoring System since August 2017, but the system was still being validated. Carter refused to provide Mr. Sellner with his score or to view his score sheet.

On March 7, 2020, Mr. Sellner wrote to Legal Services Division Chief Counsel Colleen Ambrose requesting information on the Parole Guideline rules

and numeric scoring formula the Parole Board used to score his parole application. Ms. Ambrose did not respond to his request.

Mr. Sellner also contends that he was treated differently from another inmate who was allowed to view and copy his Parole Guideline Score Sheet. He contends that Inmate John Miller also requested his score sheet. Carter initially refused to provide the sheet, but Miller filed suite against the Board in State District Court. Mr. Sellner alleges that in that lawsuit, Carter argued that Miller's original request was not specific enough but that once she received a more specific request, she promptly provided Miller with the score sheet. Mr. Sellner contends he has a due process and liberty interest expectation in his parole score being accurate and legal.

### B. Claims

In Count 1, Mr. Sellner claims that Defendants Newman, Lucero, and Bauer violated his constitutional right to minimum due process protections mandated in Parole Statute § 46-23-202 MCA by holding his August 21, 2019 parole hearing in his absence.

In Count 2, Mr. Sellner contends that Defendants Newman, Lucero, and Bauer violated his constitutional right to procedural due process mandated in Parole Board rule § 20.25.501(1)(3)(4) ARM which commands that defendants provide him with written reasons for denying his August 21, 2019 parole application because they did not list "long-standing anti-government beliefs" in his

4

written case disposition as later revealed by Mr. Newman.

In Count 3, Mr. Sellner contends Defendants Newman, Lucero, and Bauer violated his constitutional right to fair and equal treatment under state administrative statutes because they began utilizing a new parole point scoring system to evaluate state prisoners for release.  He claims he was treated differently than all state prisoners who had parole hearings prior to August 2017 who had the benefit of legally adopted and published rules and proper notice of all Board rules and procedures.  He contends in his August 2019 hearing the Board secretly used a parole scoring system to evaluate his parole application without publication or notice.

In Count 4, Mr. Sellner alleges Defendant Carter violated his constitutional right to fair and equal treatment under Montana state open records statutes when she denied his request to view his parole guideline score but provided Inmate John Miller with his score sheet.  He claims he is similarly situated to Mr. Miller and there is no rational basis for Carter to treat him differently and refuse his parole score sheet.

In Count 5, Mr. Sellner argues Defendants Newman, Lucero, and Bauer violated his constitutional right to due process notice protection mandated under state administrative procedure statutes by refusing to publish and allow public comment on all forms, rules, procedures, and legal interpretations used in parole

board operations.  He contends Defendants secretly utilized a parole scoring system to evaluate his release without providing notice to him prior to August 21, 2019 parole hearing and refused him access to his parole score.

In Count 6, Mr. Sellner contends Defendants Newman, Lucero, and Bauer violated his constitutional right to the due process protections mandated in state statutes by secretly using an illegally adopted numeric scoring system to decide his August 21, 2019 parole application without affording him notice.  He contends he has a liberty interest in verifying the correctness of his parole score sheet totals.

In Count 7, Mr. Sellner alleges civil conspiracy under 42 U.S.C. § 1983.  He contends Defendants Carter, Bauer, Lucero, Bell, and Newman acted in concert with Defendants Ambrose, Lishman, and Schneider to deprive him of his constitutional right to equal protection and due process under Montana law.

## III.  SCREENING STANDARD

Mr. Sellner is a prisoner proceeding in forma pauperis so the Court must review his Complaint under 28 U.S.C. § 1915 and § 1915A.  Sections 1915A(b) and 1915(e)(2)(B) require the Court to dismiss a complaint filed in forma pauperis and/or by a prisoner against a governmental defendant before it is served if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  A complaint is frivolous if it "lacks an arguable basis either in law or in fact."

*Neitzke v. Williams*, 490 U.S. 319, 325 (1989). "A case is malicious if it was filed with the intention or desire to harm another." *Andrews v. King*, 398 F.3d 1113, 1121 (9th Cir. 2005). A complaint fails to state a claim upon which relief may be granted if a plaintiff fails to allege the "grounds" of his "entitlement to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation omitted).

Rule 8 of the Federal Rules of Civil Procedure provides that a complaint "that states a claim for relief must contain . . . a short and plain statement of the claim showing that the [plaintiff] is entitled to relief." Fed.R.Civ.P. 8(a)(2). That is, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). A complaint's allegations must cross "the line from conceivable to plausible." *Iqbal*, 556 U.S. at 680.

There is a two-step procedure to determine whether a complaint's allegations cross that line. *See Twombly*, 550 U.S. at 556; *Iqbal*, 556 U.S. 662. First, the Court must identify "the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679, 680. Factual allegations are not entitled to the assumption of truth if they are "merely consistent with liability," or "amount to nothing more than a 'formulaic recitation of the elements' of a constitutional" claim. *Id.* at 679, 681. A complaint stops short of the line between probability and the possibility of relief where the facts pled are merely consistent

with a defendant's liability.  *Id.* at 678.

Second, the Court must determine whether the complaint states a "plausible" claim for relief.  *Iqbal*, 556 U.S. at 679.  A claim is "plausible" if the factual allegations, which are accepted as true, "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678.  This inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679 (citation omitted).  If the factual allegations, which are accepted as true, "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]' — 'that the pleader is entitled to relief.'"  *Id. citing* Fed.R.Civ.P. 8(a)(2).

"A document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'"  *Erickson v. Pardu*, 551 U.S. 89, 94 (2007); *cf*. Fed. Rule Civ. Proc. 8(e) ("Pleadings must be construed so as to do justice").

## IV.  SCREENING ANALYSIS

### A.  Violations of State Law

In Counts 1-6 of his Complaint, Mr. Sellner alleges violations of due process and equal protection under Montana statutory law.  In order to state a claim under 42 U.S.C. § 1983, a plaintiff must allege:  (1) a violation of a federal constitutional

or statutory right; and (2) that the violation was committed by a person acting under the color of state law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).  Section 1983 limits a federal court's analysis to the deprivation of rights secured by the federal "Constitution and laws." 42 U.S.C. § 1983.  A violation of state law may form the basis for a Section 1983 action but only when that violation causes the deprivation of a right protected by the United States Constitution.  *Lovell v. Poway Unified Sch. Dist.*, 90 F.3d 367, 370 (9th Cir. 1996) *citing Hallstrom v. City of Garden City*, 991 F.2d 1473, 1482 n. 22 (9th Cir. 1993) *cert. denied*, 510 U.S. 991 (1993).  "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress."  *Lovell*, 90 F.3d at 370.  The United States Supreme Court has long recognized that a "mere error of state law" is not a denial of due process.  *Engle v. Isaac*, 456 U.S. 107, 121 n. 21 (1982).

Whether the Parole Board followed state law or its own procedures is an issue of state law.  Mr. Sellner may not "transform a state-law issue into a federal one merely by asserting a violation of due process."  *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996) (citations omitted).  Mr. Sellner's allegations that the denial of his parole in August 2019 violated Montana statutes or the mandates of the operational procedures for the Parole Board does not state a cognizable federal

claim for violation of due process.

Because as set forth below, Mr. Sellner has failed to state a federal claim for relief, the Court should decline to exercise supplemental jurisdiction over the state law claims. *See* 28 U.S.C. § 1367 (providing that in a civil action in which a district court has original jurisdiction, there is supplemental jurisdiction over claims that are part of the same case or controversy); *Ove v. Gwinn*, 264 F.3d 817, 826 (9th Cir. 2001) ("A court may decline to exercise supplemental jurisdiction over related state-law claims once it has dismissed all claims over which it has original jurisdiction." (internal quotation marks and citations omitted)); *see also Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 351 (1988) ("When the single federal-law claim in the action was eliminated at an early stage of the litigation, the District Court had a powerful reason to choose not to continue to exercise jurisdiction."). To the extent Mr. Sellner seeks to bring state law claims, he must do so by filing an action in state court.

## B.  Civil Conspiracy

In Count 7, Mr. Sellner alleges Defendants conspired to deprive him of his constitutional rights under Montana law. A conspiracy under 42 U.S.C. § 1983 is "a conspiracy to deprive a plaintiff of a constitutional or federally protected right under color of state law." *Dixon v. City of Lawton*, 898 F.2d 1443, 1449, n. 6 (10th Cir. 1990). In the context of conspiracy claims brought pursuant to section 1983, a

complaint must allege facts to support the existence of a conspiracy among the defendants. *Buckey v. Cty. of Los Angeles*, 968 F.2d 791, 794 (9th Cir. 1992). A plaintiff must allege that defendants conspired or acted jointly in concert and that some overt act was done in furtherance of the conspiracy. *Sykes v. California*, 497 F.2d 197, 200 (9th Cir. 1974).

Conspiracy allegations must be more than mere conclusory statements. *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1979) ("[M]ore than vague conclusory allegations are required to state a [conspiracy] claim [under section 1983]"). "To establish a conspiracy, a plaintiff must demonstrate the existence of an agreement or 'meeting of the minds' to violate constitutional rights." *Mendocino Environmental Center v. Mendocino Cty.*, 192 F.3d 1283, 1301 (9th Cir. 1999). "The defendants must have, by some concerted action, intend[ed] to accomplish some unlawful objective for the purpose of harming another which results in damage." *Id*. The agreement need not be overt and may be inferred on the basis of circumstantial evidence, such as a showing that the alleged conspirators committed acts unlikely to have been undertaken without an agreement. *Id*. "[A] conclusory allegation of agreement at some unidentified point does not supply adequate facts to show illegality." *Twombly*, 550 U.S. at 557. A plaintiff must plead "enough factual matter (taken as true) to suggest that an agreement was made." *Id*. at 556.

Mr. Sellner does not allege sufficiently specific facts in support of his allegations that Defendants conspired to deprive him of his civil rights. The Complaint does not contain any factual allegations showing an agreement or "meeting of the minds" between the defendants to deprive Mr. Sellner of his civil rights. *See Iqbal*, 556 U.S. at 676 (requirement that plaintiff allege facts showing plausible claim for relief "asks for more than a sheer possibility that a defendant has acted unlawfully"; complaint pleading "facts that are 'merely consistent with' a defendant's liability...'stops short of the line between possibility and plausibility of 'entitlement to relief' ' ") (citation omitted). There are no facts supporting how a conspiracy was formed or explaining how Mr. Sellner's injuries resulted from a conspiracy. Instead, Mr. Sellner provide little more than a "mere allegation of conspiracy without factual specificity." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988). Mr. Sellner's broad allegations that Defendants conspired with each other are insufficient.

Most importantly, however, is that in order to "recover under a [section] 1983 conspiracy theory, a plaintiff must plead and prove not only a conspiracy, but also a deprivation of federal rights; pleading and proof of one without the other will be insufficient." *Dixon*, 898 F.2d at 1449, n. 6. The "essence of a [section] 1983 claim is the deprivation of the right rather than the conspiracy" and the conspiracy is not itself a constitutional tort under section 1983. *Dixon*, 898 F.2d at

1449; *Lacey v. Maricopa Cty.*, 693 F.3d 896, 935 (9th Cir. 2012). A section 1983 conspiracy theory does not enlarge the nature of the claims asserted by a plaintiff, as there must always be an underlying constitutional violation. *Lacey*, 693 F.3d at 935.

Here, Mr. Sellner has not alleged a separate federal constitutional violation and it does not appear that he can do so. Mr. Sellner cannot challenge the actual denial of his parole because Section 1983 claims based on parole determinations are categorically barred by *Heck v. Humphrey*, 512 U.S. 477 (1994) unless and until the determination is overturned via writ of habeas corpus. *Butterfield v. Bail*, 120 F.3d 1023, 1024–25 (9th Cir. 1997) (*citing Elliott v. United States*, 572 F.2d 238, 239 (9th Cir. 1978)). If, however, Mr. Sellner only seeks a hearing free from constitutional infirmity, and not a favorable decision, i.e., not any relief that will necessarily affect the length of his confinement (as it appears in this case), he may bring the claim under § 1983 as opposed to habeas corpus. *See Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005). But even if that is all Mr. Sellner is trying to do in this case, he has failed to state such a claim.

To establish a constitutional due process claim under 42 U.S.C. § 1983 a plaintiff must show that the state deprived him of a constitutionally protected interest in "life, liberty, or property" without due process of law. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (*citing Parratt v. Taylor*, 451 U.S. 527, 537

(1981)).  In the absence of such a constitutionally protected interest, the

Constitution does not require the provision of any process.  *See Board of Regents*

*v. Roth*, 408 U.S. 564, 569 (1971); *Erickson v. United States*, 67 F.3d 858, 861 (9th

Cir. 1995).

    "There is no constitutional or inherent right of a convicted person to be

conditionally released before the expiration of a valid sentence."  *Greenholtz v.*

*Inmates of Neb. Penal & Corr. Complex*, 442 U.S. U.S. 1, 7 (1979).  In *Allen v.*

*Board of Pardons*, 792 F.2d 1404 (9th Cir. 1986) affirmed 482 U.S. 369 (1987),

the United States Supreme Court held that the Montana parole statute created a

protected liberty interest.  But the Montana Legislature amended that statute in

1989 and the Montana Supreme Court has therefore held that inmates who

committed offenses after 1989 have no liberty interest in parole and inmates who

committed their crimes prior to 1989 are entitled to due process protections.

*Worden v. Mont. Bd. of Pardons & Parole*, 962 P. 2d 1157, 1165 (Mont. 1998).

Mr. Sellner committed his offense in 1992 and therefore has no liberty interest in

parole.  He thus has no basis for a federal procedural due process claim.

    Similarly, Mr. Sellner has failed to allege a federal equal protection claim.

The equal protection clause requires that persons who are similarly situated be

treated alike.  *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439

(1985); *Hartmann v. California Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1123 (9th

Cir. 2013); *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013).  To state a
claim, plaintiffs must show that defendants intentionally discriminated against
them based on their membership in a protected class, *Hartmann*, 707 F.3d at 1123,
*Furnace*, 705 F.3d at 1030, *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir.
2003), *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166-67 (9th Cir. 2005), *Lee
v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001), or that similarly situated
individuals were intentionally treated differently without a rational relationship to a
legitimate state purpose, *Engquist v. Oregon Department of Agr.*, 553 U.S. 591,
601-02 (2008), *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000), *Lazy Y
Ranch Ltd. v. Behrens*, 546 F.3d 580, 592 (9th Cir. 2008), *North Pacifica LLC v.
City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008).

Mr. Sellner alleges he has been treated differently from inmates who had
parole hearings prior to 2017.  But to the extent that there was a difference in
treatment, it was a function of a change in policy rather than an intent to
discriminate.  Further, the mere fact that Mr. Miller received a copy of the Parole
Guideline Score form after filing a lawsuit in state court and Mr. Sellner was only
given an explanation of what was on the form is insufficient to establish an equal
protection claim.

Based upon the foregoing, the Court issues the following:

## ORDER

1.  Mr. Sellner's Motion to Proceed in Forma Pauperis (Doc. 1) is GRANTED.

2.  The Clerk shall edit the text of the docket entry for the Complaint (Doc. 2) to remove the word "LODGED."  The Complaint is deemed filed on April 23, 2020.

Further, the Court issues the following:

## RECOMMENDATIONS

1.  Mr. Sellner's claims brought pursuant to 42 U.S.C. § 1983 should be DISMISSED and the Court should decline to exercise jurisdiction over Mr. Sellner's state law claims.  This matter should therefore be DISMISSED and the Clerk of Court should be directed to close this matter and enter judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure.

2.  The Clerk of Court should be directed to have the docket reflect that the Court certifies pursuant to Rule 24(a)(3)(A) of the Federal Rules of Appellate Procedure that any appeal of this decision would not be taken in good faith.

3.  The Clerk of Court should be directed to have the docket reflect that this dismissal counts as a strike pursuant to 28 U.S.C. § 1915(g) because Mr. Sellner's allegations fail to state a claim.

**NOTICE OF RIGHT TO OBJECT TO FINDINGS &**
**RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT**

Mr. Sellner may file objections to these Findings and Recommendations within fourteen (14) days after service (mailing) hereof.[2]  28 U.S.C. § 636.  Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

This order is not immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Fed.R.App.P. 4(a), should not be filed until entry of the District Court's final judgment.

DATED this 11th day of August, 2020.


   */s/ John Johnston*
John Johnston
United States Magistrate Judge

---

[2]Mr. Sellner shall have an additional three days after this period would otherwise expire.